Gary Jay Kaufman, Esq. (State Bar No. 92759)
*gary@kaufmanlawgroupla.com*
Colin Hardacre, Esq. (State Bar No. 250915)
*colin@kaufmanlawgroupla.com*
Jonathan M. Genish, Esq. (State Bar No. 259031)
*jgenish@kaufmanlawgroupla.com*
THE KAUFMAN LAW GROUP
1901 Avenue of the Stars, Suite 1010
Los Angeles, California 90067
Telephone:  (310) 286-2202
Facsimile:   (310) 712-0023

Attorneys for Plaintiff and Counterdefendant,
R&O Pharmacy, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R&O PHARMACY, LLC, a California limited liability company,<br><br>    Plaintiff,<br>  v.<br><br>VALEANT PHARMACEUTICALS NORTH AMERICA LLC, a Delaware limited liability company,<br><br>    Defendant.<br><br>And related counterclaim | Case No. 2:15−cv−07846−SJO−JEMx<br><br>**R&O PHARMACY, LLC'S ANSWER TO VALEANT PHARMACEUTICALS NORTH AMERICA LLC'S COUNTERCLAIM**<br><br>**DEMAND FOR JURY TRIAL** |

Answer to Counterclaim - 1

# ANSWER TO COUNTERCLAIM

Plaintiff and Counterdefendant R&O Pharmacy, LLC, a California limited liability company ("R&O"), hereby answers the counterclaim of Defendant and Counterclaimant Valeant Pharmaceuticals North America LLC, a Delaware limited liability company ("Valeant") (the "Counterclaim"), as follows:

## INTRODUCTION

1.  R&O lacks sufficient knowledge or information to form a belief as to the truth of the allegation that Isolani, LLC ("Isolani") placed orders for millions of dollars of Valeant medications, but notes that this allegation contradicts 1) paragraph 26 of the Counterclaim, wherein Valeant alleges that Philidor Rx Services, LLC ("Philidor") ordered large quantities of Valeant's medications; 2) Exhibit D to the Counterclaim, which evidences a purchase order from Philidor to Valeant; and 3) Exhibit G to the Counterclaim, which evidences a packing slip showing Philidor as the "Sold to" party. R&O admits that it received shipments of Valeant medications. R&O further admits that it dispensed Valeant branded medications to members of the public based upon specific prescriptions by physicians calling for Valeant medications. R&O further admits that it has received checks from third-party payors. Except as so admitted, R&O denies the allegations of paragraph 1.

2.  R&O admits that Russell Reitz ("Reitz") is the Pharmacist-in-Charge ("PIC") for R&O. Except as so admitted, R&O denies the allegations of paragraph 2.

3.  R&O admits that Reitz would often sign documents acknowledging receipt of medications shipped to R&O. Except as so admitted, R&O denies the allegations of paragraph 3.

4.  R&O lacks sufficient knowledge or information to form a belief as to what Valeant understands or does not understand and what Philidor did or did not do and on that basis denies such allegations. R&O denies the remaining allegations of paragraph 4.

///

5. R&O admits that it received shipments of Valeant medications between December 2014 and August 2015 and admits that Reitz or another R&O employee signed bills of lading signifying that shipments had been received by R&O. R&O further admits that Reitz or another R&O employee would ensure that all the Valeant medications listed on packing slips were present in the shipment. R&O further admits that Reitz or the employee acting at his direction would then sign purchase orders "Complete" to show that particular orders had been completed. Except as so admitted, R&O denies the allegations of paragraph 5.

6. R&O lacks sufficient knowledge or information to form a belief as to what, if anything, Isolani paid to Valeant. R&O admits that it filled prescriptions to patients. Except as so admitted, R&O denies the allegations of paragraph 6.

7. R&O admits that it dispensed Valeant medications and received third-party reimbursements checks for those prescriptions. R&O further admits that it received a letter from Valeant on September 4, 2015 that requested payment of $69,861,343.08. R&O refers the Court to Exhibit A to R&O's Complaint for a true and correct statement of that letter's contents. Except as so admitted, R&O denies the allegations of paragraph 7.

8. R&O admits that it responded to Valeant's September 4 letter through counsel. R&O refers the Court to Exhibit B to R&O's Complaint for a true and correct statement of that letter's contents and otherwise denies Valeant's characterization of R&O's counsel's words. Except as so admitted, R&O denies the allegations of paragraph 8.

9. R&O lacks sufficient knowledge or information to form a belief as to Valeant's motivations for filing the Counterclaim and further avers that Valeant is not entitled to any amounts from R&O.

## THE PARTIES

10. R&O lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 10.

11. R&O admits that it is a limited liability company organized under the laws of California with a principal place of business in Camarillo, California and admits that Reitz is a member of R&O.  R&O specifically avers that Isolani is not a member of R&O and further avers that Isolani never submitted proper documents to the California Board of Pharmacy for a change of ownership in any percentage.  R&O lacks sufficient knowledge or information to form a belief as to whether or not Isolani's sole member is Eric Rice.  Except as so admitted, R&O denies the allegations of paragraph 11.

## JURISDICTION AND VENUE

12. Paragraph 12 contains legal conclusions to which no response is required.  To the extent that a response is required, R&O admits that this Court has subject matter jurisdiction over this action.

13. Paragraph 13 contains legal conclusions to which no response is required.  To the extent that a response is required, R&O admits that this Court has personal jurisdiction over it.

14. Paragraph 14 contains legal conclusions to which no response is required.  To the extent that a response is required, R&O admits that venue is proper in this judicial district.

## RELEVANT FACTS

15. R&O admits that patients suffering from ailments see a doctor for treatment, who may then write a prescription for a medication, and that the patient then takes that prescription to a pharmacy.  R&O further admits that a pharmacy confirms certain basic information about the patient, the doctor, the prescription, and insurance coverage and if a pharmacy confirms the relevant information, it then dispenses the medication to the patient.  R&O also admits that in many instances a pharmacy will then collect any co-payment from the patient, submit a bill to the relevant third-party payor, for instance an insurance company, and in some cases pay the drug manufacturer for the medications dispensed.  Except as so admitted, R&O denies the allegations of paragraph 15.

16. R&O admits the allegations of paragraph 16.

17. R&O admits the allegations of paragraph 17.

18. R&O lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 18 and on that basis denies them.

19. R&O admits the allegations of paragraph 19.

20. R&O admits that Isolani was formed in October 2014. R&O lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 20 and on that basis denies them.

21. R&O admits that it entered into the Purchase and Sale Agreement with Isolani (the "Purchase Agreement"). Except as so admitted above, R&O denies the allegations of paragraph 21.

22. R&O admits that it entered into the Management Services Agreement ("MSA") with Isolani and avers that the document speaks for itself. Except as so admitted above, R&O denies the allegations of paragraph 22.

23. R&O admits that Reitz is the PIC at the Pharmacy and is responsible for ensuring that the Pharmacy complied with all State and Federal laws regarding the practice of pharmacy. R&O further admits that concurrent with the Purchase Agreement and the MSA, Philidor offered to employ Reitz as the PIC at the Pharmacy for a period of 18 months beginning in November, 2014 and that Reitz accepted this offer of employment. Except as so admitted, R&O denies the allegations of paragraph 23.

24. R&O admits that as PIC, Reitz continued filling prescriptions for dispensed medications. R&O further admits that it received third-party reimbursement checks. As to the remaining allegations regarding the Purchase Agreement, R&O avers that the document speaks for itself and denies the remaining allegations of paragraph 24.

25. R&O lacks sufficient knowledge or information to form a belief as to Valeant's understanding and Philidor's actions as alleged in paragraph 25 and on that basis denies them. R&O admits that Reitz sent the email attached as Exhibit D and

refers the Court to that email for a true and correct statement of its contents and otherwise denies Valeant's characterizations of Reitz's words. Except as so admitted, R&O denies the allegations of paragraph 25.

26. To the extent that paragraph 26 alleges certain actions purportedly taken by Valeant and Philidor, R&O lacks sufficient knowledge or information to form a belief as to the truth of those allegations and on that basis denies them. R&O admits that it received shipments of Valeant medications and admits that it received copies of purchase orders that reflected Philidor as the "bill to" or "sold to" party. R&O is without sufficient information or belief to form a belief as to the authenticity of the documents attached as Exhibits E through G to the Counterclaim and on that basis denies that they are authentic. Except as so admitted above, R&O denies the allegations of paragraph 26.

27. R&O admits that it was identified on product orders and product invoices as the party receiving shipment of Valeant medications and that it received pharmaceutical products from Valeant. R&O further admits that when the Valeant products arrived at the Pharmacy, Reitz or another R&O employee would accept delivery of the goods and sign the bill of lading. Except as so admitted, R&O denies the allegations of paragraph 27.

28. R&O admits the allegations of paragraph 28.

29. R&O denies the allegations of paragraph 29.

30. R&O admits that between January and August 2015, R&O filled numerous prescriptions for Valeant's pharmaceutical products. R&O further admits that it received reimbursements checks from patients' insurance companies for these filled prescriptions and that Reitz performed these functions in his role as PIC. Except as so admitted, R&O denies the allegations of paragraph 30.

31. R&O denies that any medication was sold to R&O. R&O lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 31 and on that basis denies them.

32. R&O admits that after July 16, 2015, Reitz continued to fill prescriptions for Valeant medications and dispensed those medications to patients. R&O lacks sufficient knowledge or information to form a belief as to what payments Valeant received or did not receive, or what Valeant's payable balances may have been. R&O denies the remaining allegations of paragraph 32.

33. Paragraph 33 is hopelessly vague, ambiguous and unintelligible and on that basis R&O denies the allegations of paragraph 33.

34. R&O admits that it has possession of Valeant medications. R&O lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 34 and on that basis denies them.

35. R&O admits that it received a letter from Robert Chai-Onn, Valeant's Executive Vice President, Chief Legal Officer and General Counsel on September 4, 2015. R&O refers the Court to Exhibit A to R&O's Complaint for a true and correct statement of that letter's contents. Except as so admitted, R&O denies the allegations of paragraph 35.

36. R&O admits that its counsel sent a letter to Valeant on September 8, 2015. R&O refers the Court to Exhibit B to R&O's Complaint for a true and correct statement of that letter's contents. Except as so admitted, R&O denies the allegations of paragraph 36.

37. R&O admits that it filed its Complaint on October 6, 2015. R&O denies the remaining allegations of paragraph 37.

## FIRST CAUSE OF ACTION

(Breach of Contract)

38. R&O incorporates by reference its responses to paragraphs 1 through 37 of the Counterclaim as though fully set forth herein.

39. R&O lacks sufficient knowledge or information to form a belief as to what Isolani did or did not do and on that basis denies such allegations. R&O denies the remaining allegations of paragraph 39.
Answer to Counterclaim - 7

40. R&O admits that it received shipments of pharmaceuticals from Valeant. Except as so admitted, R&O denies the allegations of paragraph 40.

41. R&O admits that it received shipments of pharmaceuticals from Valeant. Except as so admitted, R&O denies the allegations of paragraph 41.

42. R&O admits that it dispensed pharmaceutical products to patients pursuant to physician prescriptions and that it received payments from third-party payors such as insurance companies. Except as so admitted, R&O denies the allegations of paragraph 42.

43. R&O denies the allegations of paragraph 43.

44. Paragraph 44 contains legal conclusions to which no response is required. To the extent that a response is required, R&O denies any contractual relationship with Valeant.

45. Paragraph 45 contains legal conclusions to which no response is required. To the extent that a response is required, R&O denies the allegations of paragraph 45.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

46. R&O incorporates by reference its responses to paragraphs 1 through 45 of the Counterclaim as though fully set forth herein.

47. R&O denies the allegations of paragraph 47.

48. R&O admits the allegations of paragraph 48.

49. R&O admits that it dispensed Valeant medications to patients and received reimbursement checks from insurance companies. Except as so admitted, R&O denies the allegations of paragraph 49.

50. Paragraph 50 contains legal conclusions to which no response is required. To the extent that a response is required, R&O denies the allegations of paragraph 50.

51. Paragraph 51 contains legal conclusions to which no response is required. To the extent that a response is required, R&O denies the allegations of paragraph 51.

/ / /

## THIRD CAUSE OF ACTION

### (Accounting)

52. R&O incorporates by reference its responses to paragraphs 1 through 51 of the Counterclaim as though fully set forth herein.

53. R&O denies the allegations of paragraph 53.

54. R&O lacks sufficient knowledge or information to form a belief as to Valeant's ability or inability to determine anything and denies the remaining allegations of paragraph 54.

55. Paragraph 55 contains legal conclusions to which no response is required. To the extent that a response is required, R&O denies the allegations of paragraph 55.

56. Paragraph 56 contains legal conclusions to which no response is required. To the extent that a response is required, R&O denies the allegations of paragraph 56.

## FOURTH CAUSE OF ACTION

### (Open Book Account)

57. R&O incorporates by reference its responses to paragraphs 1 through 56 of the Counterclaim as though fully set forth herein.

58. R&O denies the allegations of paragraph 58.

59. R&O lacks sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 59 and on that basis denies them.

60. R&O denies the allegations of paragraph 60.

61. R&O denies the allegations of paragraph 61.

## COUNTERCLAIM PRAYER FOR RELIEF

62. R&O denies that Valeant is entitled to any of the relief requested in the Counterclaim's Prayer for Relief.

## AFFIRMATIVE DEFENSES

Neither R&O nor Reitz ever received a single invoice sent from Valeant. In fact, neither R&O nor Reitz ever received a single letter, call or email directly from Valeant until September 4, 2015, when Robert Chai-Onn, Valeant's Executive Vice President,

Chief Legal Officer and General Counsel sent R&O a letter claiming that R&O owed Valeant over $69,000,000.

While R&O did enter into the "Purchase Agreement" and MSA with Isolani, R&O terminated any and all agreements with Isolani in writing on or about August 31, 2015 due to Isolani, Philidor and others' wrongful conduct, including but not limited to improperly using R&O's unique National Council for Prescription Drug Programs ("NCPDP") and National Provider Identifier Standard ("NPI") numbers to bill for product dispensed by other pharmacies without R&O's knowledge or permission and for drugs that R&O did not stock or dispense.

R&O is informed and believes and based thereon, without limitation, alleges that Philidor is actually a subsidiary or alter ego of Valeant, by virtue of Valeant's public admissions that 1) it paid $100,000,000 for an option to purchase Philidor for $0; 2) Valeant and Philidor have a joint steering committee; 3) Valeant has a right of approval over key appointments at Philidor; 4) Valeant included Philidor in its internal control testing and internal audit program for compliance with the Sarbanes-Oxley Act; and 5) Valeant consolidates its financials with Philidor.  R&O is further informed and believes and based thereon alleges that Philidor owns Isolani through an option contract substantially similar to the one between Valeant and Philidor.  Accordingly, R&O is informed and believes that Isolani, through Philidor, is merely a subsidiary or alter ego of Valeant.

Based on the above, without limitation and without prejudice to any amended pleadings, R&O alleges the following additional defenses to the Counterclaim:

1.   The Counterclaim fails to state any claim upon which relief can be granted.

2.   Valeant has failed to join necessary or indispensable parties under the Federal Rules of Civil Procedure, rule 19.

3.   Valeant's wrongful conduct, or wrongful conduct attributable to Valeant by virtue of a subsidiary, agency or other relationship, has exposed R&O and Reitz to substantial current and future liability, as well as substantial damages, including but not


limited to loss of income and reputation. R&O does not currently know the precise amounts of these liabilities and damages, but believes that they could exceed the amounts Valeant demands in the Counterclaim.

4. Valeant is barred by its own conduct, or conduct attributable to Valeant by virtue of a subsidiary, agency or other relationship, from asserting the purported claims in the Counterclaim, and from recovering the relief sought therein.

5. Valeant lacks standing to assert one or more of the causes of action set forth in the Counterclaim.

6. Valeant is barred from obtaining any relief sought in the Counterclaim by the equitable doctrine of unclean hands.

7. Valeant's claims are barred by the equitable doctrines of estoppel and waiver.

8. To the extent that any contractual relationship existed between the parties, R&O was excused or prevented from performing its obligations, if any, because of Valeant's material breaches of, and otherwise wrongful and bad faith conduct in connection with, such agreements.

9. Any damages allegedly suffered by Valeant were caused by Valeant's unreasonable failure to minimize or prevent those damages in a timely manner. Therefore, Valeant's recovery, if any, must be reduced in proportion to its failure to take reasonable steps to mitigate damages.

10. The acts and omissions alleged in the Counterclaim, as well as the damages and harms alleged therein, all of which R&O expressly denies, were caused and/or contributed to by the acts and omissions of third parties over which R&O either had no control or any duty to control, or exceeded their authority to act on R&O's behalf. Therefore, the liability for Valeant's injury must be apportioned according to their relative degrees of fault, and the liability of R&O, if any, reduced accordingly.

11. If the trier of fact awards Valeant any monetary relief, R&O is entitled to an offset against said sum in the amount of damages R&O has sustained as a result of

Valeant's negligent and/or wrongful conduct, or negligent and/or wrongful conduct of third parties that is attributable to Valeant by virtue of a subsidiary, agency or other legal relationship.

R&O reserves the right to supplement its identification of additional defenses as more facts are ascertained during discovery and investigation.

## RELIEF REQUESTED

WHEREFORE, R&O prays for relief as follows:

1. That Valeant take nothing by reason of the Counterclaim;
2. That the Court enter judgment in favor of R&O and against Valeant on all causes of action in the Counterclaim;
3. That the Court award R&O its costs of suit herein, including attorneys' fees where available; and
4. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

R&O hereby demands a trial by jury on all matters and issues triable by jury in this action.

DATED: November 19, 2015                THE KAUFMAN LAW GROUP


By: _____/s/_____
Gary Jay Kaufman
Attorneys for Plaintiff and
Counterdefendant
R&O Pharmacy, LLC