1  Michael H. Steinberg (SBN 134179)
   steinbergm@sullcrom.com
2  Brian R. England (SBN 211335)
   englandb@sullcrom.com
3  SULLIVAN & CROMWELL LLP
   1888 Century Park East, Suite 2100
4  Los Angeles, California 90067-1725
   Tel.:   (310) 712-6600
5  Fax:   (310) 712-8800

6  *Attorneys for Defendant and Counterclaimant*
   *Valeant Pharmaceuticals North America, LLC*
7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11  R&O PHARMACY, LLC, a            )  Case No. 2:15-cv-07846-SJO(JEMx)
    California limited liability    )
12  company,                        )  **VALEANT PHARMACEUTICALS**
                                     )  **NORTH AMERICA LLC'S**
13                      Plaintiff,   )  **NOTICE OF MOTION AND**
                                     )  **MOTION FOR A PRELIMINARY**
14           v.                      )  **INJUNCTION; MEMORANDUM**
                                     )  **IN SUPPORT THEREOF**
15  VALEANT                          )
    PHARMACEUTICALS NORTH            )
16  AMERICA LLC, a Delaware          )  Hearing Date:  January 4, 2016
    limited liability company,       )  Time:          10:00 a.m.
17                                   )  Courtroom:     Courtroom 1
                        Defendant.   )
18                                   )
    ─────────────────────────────   )
19                                   )
    VALEANT                          )
20  PHARMACEUTICALS NORTH            )
    AMERICA LLC, a Delaware          )
21  limited liability company,       )
                                     )
22                  Counterclaimant, )
                                     )
23           v.                      )
                                     )
24  R&O PHARMACY, LLC, a             )
    California limited liability     )
25  company,                         )
                                     )
26                 Counterdefendant. )
                                     )
27                                   )
                                     )
28  ─────────────────────────────   )

1   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2         PLEASE TAKE NOTICE that on January 4, 2016, at 10:00 a.m., or as

3   soon thereafter as the matter may be heard,  Defendant and Counterclaimant

4   Valeant Pharmaceuticals North America LLC ("Valeant") will, and hereby does,

5   move for a preliminary injunction pursuant to Fed. R. Civ. P. 65 and Cal. Civ.

6   Proc. Code §§ 526 *et seq.*  The matter will be heard in Courtroom 1, United States

7   District Court, 312 North Spring Street, 2nd Floor, Los Angeles, California 90012.

8         This Motion is based upon this Notice of Motion and Motion, the

9   accompanying Memorandum, the Answer of Plaintiff and Counterclaim

10   Defendant, R&O Pharmacy, LLC ("R&O"), the Exhibits and the Declarations of

11   Tanya Carro ("Carro Decl."), Eric Rice ("Rice Decl."), and Michael H. Steinberg

12   ("Steinberg Decl.") submitted herewith, the remaining files and records in this

13   action, and such additional material as may be considered at the hearing.

14         As a motion for a preliminary injunction, this Motion is expressly

15   exempt from the pre-filing meet and confer requirements in Local Rule 7-3.

16   Nevertheless, Valeant requested that counsel for R&O provide the relief requested

17   in advance of filing the instant Motion.  (*See* Declaration of Michael H. Steinberg

18   ("Steinberg Decl.") Exhibit E).

19   Dated: December 7, 2015       Respectfully submitted.

20

21                      /s/ *Michael H. Steinberg*
                        Michael H. Steinberg (SBN 134179)

22                      steinbergm@sullcrom.com
                      Brian R. England (SBN 211335)

23                      englandb@sullcrom.com
                      **SULLIVAN & CROMWELL LLP**

24                      1888 Century Park East, Suite 2100
                      Los Angeles, California 90067-1725

25                      Telephone:  (310) 712-6600
                      Facsimile:   (310) 712-8800

26                      Attorneys for Defendant and

27                      Counterclaimant
                      *Valeant Pharmaceuticals North*

28                      *America LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

STATEMENT OF FACTS ...................................................... 4

ARGUMENT ...................................................................... 8

I.      VALEANT CAN EASILY DEMONSTRATE THAT IT IS LIKELY
        TO SUCCEED ON THE MERITS OF ITS CLAIMS ................... 9

        A.      Valeant Will Prevail on Its Breach of Contract Claim. ......... 9

                1.      R&O's Purchase Orders—and Valeant's Corresponding
                        Invoices—Constitute Valid Contracts. ........................ 9

                        a.      R&O Is Bound by the Purchase Orders Sent to
                                Valeant By Those Acting on Its Behalf. .............. 9

                        b.      R&O—Through Those Acting on Its Behalf—
                                Offered to Purchase Pharmaceutical Products from
                                Valeant by Sending Purchase Orders, and Valeant
                                Accepted Those Offers By Sending Invoices in
                                Response. ....................................................... 11

                        c.      Valeant's Agreement to Ship Millions of Dollars'
                                Worth of Medications to R&O, and R&O's
                                Corresponding Agreement to Pay for Those
                                Medications, Constituted Valuable Consideration. ........ 12

                2.      Valeant Fully Performed Its Contractual Obligations by
                        Shipping the Requested Pharmaceuticals to R&O. ............ 13

                3.      R&O's Failure to Pay Valeant for the Medications
                        Constitutes a Breach of the Purchase Contracts. ............ 13

                4.      Valeant Has Incurred Tens of Millions of Dollars in
                        Damages as a Result of R&O's Breach. ..................... 14

        B.      Valeant Will Also Prevail on Its Claim for Unjust Enrichment. ........ 14

                1.      R&O Has Received a Benefit in the Form of Co-Payments
                        and Third-Party Reimbursement Checks For Dispensing
                        Valeant Medications. ......................................... 14

                2.      It Would Be Unjust to Allow R&O to Retain Payments for
                        Valeant Medications. ......................................... 15

        C.      Valeant Will Also Prevail on Its Claim for an Accounting ......... 16

II.     VALEANT WILL LIKELY SUFFER IRREPARABLE HARM IN
        THE ABSENCE OF AN INJUNCTION ............................... 17

III.    THE BALANCE OF HARDSHIPS TIPS STRONGLY IN
        VALEANT'S FAVOR ................................................................ 19

IV.     AN INJUNCTION REQUIRING R&O TO DEPOSIT THE CHECKS
        IT IS WRONGFULLY WITHHOLDING IS IN THE PUBLIC
        INTEREST ........................................................................... 20

CONCLUSION ............................................................................... 20

-ii-

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alliance for the Wild Rockies* v. *Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ...................................................8, 18

*ASP Props. Grp.* v. *Fard, Inc.*,
133 Cal. App. 4th 1257 (2005) ..............................................9

*Blizzard Entm't* v. *Ceiling Fan Software LLC*,
28 F. Supp. 3d 1006, 1017 (C.D. Cal. 2013) ...........................9, 20

*Burton* v. *Matanuska Valley Lines, Inc.*,
244 F.2d 647 (9th Cir. 1957) ...............................................19

*Channel Lumber Co., Inc.* v. *Porter Simon*,
78 Cal. App. 4th 1222 (2000) .............................................10

*City of Moorpark* v. *Moorpark Unified Sch. Dist.*,
54 Cal. 3d ........................................................................11

*Civic Western Corp.* v. *Zila Indus., Inc.*,
66 Cal. App. 3d 1 (1977) ....................................................16

*Donovan* v. *RRL Corp.*,
26 Cal. 4th 261 (2001) .......................................................11

*First Nationwide Savings* v. *Perry*,
11 Cal. App. 4th 1657 (1992) .............................................14, 15

*Flores* v. *Evergreen At San Diego, LLC*,
148 Cal. App. 4th 581 (2007) .............................................10

*Ghirardo* v. *Antonioli*,
14 Cal. 4th 39 (1996) .........................................................14, 15

*Lectrodryer* v. *SeoulBank*,
77 Cal. App. 4th 723 (2000) ...............................................14, 15, 16

*Los Defensores, Inc.* v. *Gomez*,
223 Cal. App. 4th 377 (2014) .............................................16

*Lough* v. *Blount*,
336 F. Supp. 627 (D. Mont. 1971) .......................................8

*Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Chung*,
No. CV 01-00659, 2001 WL 283083 (C.D. Cal. Feb. 2, 2001) ...........20

*Peterson* v. *Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) ...........................................14

*Privitera* v. *Bd. Of Med. Quality Assurance*,
926 F.2d 890 (9th Cir. 1991) ...............................................18

-iii-

*Rodriguez* v. *Oto*,
212 Cal. App. 4th 1020 (2013) ...................................................................11

*Rosen Entm't Systems, LP* v. *Eiger Vision*,
343 F. Supp. 2d 908 (C.D. Cal. 2004) ...............................................3, 18, 19

*Saks* v. *Charity Mission Baptist Church*,
90 Cal. App. 4th 1116 (2001) ...................................................................12

*Steiner* v. *Mobil Oil Corp.*,
20 Cal. 3d 90 (1977)...................................................................................11

*Sunset Milling & Grain Co.* v. *Anderson*,
39 Cal. 2d 773 (1952) ................................................................................10

*Tanner Motor Livery, Ltd.* v. *Avis, Inc.*,
316 F.2d 804 (9th Cir. 1963) ......................................................................8

*Teselle* v. *McLoughlin*,
173 Cal. App. 4th 156 (2009) ...................................................................17

*Thalheimer* v. *City of San Diego*,
645 F.3d 1109 (9th Cir. 2011) .....................................................................8

*US Ecology, Inc.* v. *State*,
92 Cal. App. 4th 113 (2001) .....................................................................12

*Vega* v. *Ocwen Fin. Corp.*,
No. 2:14-cv-04408, 2015 WL 1383241 (C.D. Cal. Mar. 24, 2015)................14

*Winter* v. *Nat'l Resources Defense Council, Inc.*,
555 U.S. 7 (2008).................................................................................8, 18

**STATUTES**

Cal. Civ. Code § 1550..................................................................................9

Cal. Civ. Code § 1605................................................................................12

Cal. Civ. Code § 2296................................................................................10

Cal. Civ. Code § 2330................................................................................10

Cal. Com. Code § 2102................................................................................9

Cal. Com. Code § 2204(1).........................................................................11

Cal. Com. Code § 2206(1)(a).....................................................................11

Cal. Com. Code § 2301..............................................................................13

Cal. Com Code § 2507..............................................................................13

-iv-

Cal. Com. Code § 2709 ............................................................................14

Cal. Com. Code § 4404 .......................................................................3, 18

Cal. Corp. Code § 17701.05(d)..............................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)...............................................................................10

**INTRODUCTION**

1  
2    In this collection action, Valeant Pharmaceuticals North America,  
3 LLC ("Valeant") seeks payment for the $19.3-plus million in medications it  
4 delivered to R&O Pharmacy, LLC ("R&O") from July 16, 2015 through August  
5 31, 2015.  R&O dispensed Valeant's medication to patients, collecting at least  
6 $19.3 million—but failing to remit such amounts, all of which are owed to  
7 Valeant.  R&O, however, has kept that $19.3-plus million for itself, with no  
8 indication that it ever intends to pay Valeant for the medications R&O received.  

9    Absent the relief sought through this Motion, Valeant will be  
10 irreparably harmed as R&O uses the funds it collected for R&O's own benefit.  
11 R&O seeks to profit from its wrongdoing, and deprive Valeant from a remedy,  
12 which is precisely why Valeant seeks an order preserving the *status quo* and  
13 protecting the funds it will be awarded at the end of this action.  

14    The value of R&O is wildly insufficient to repay these amounts to  
15 Valeant.  That much is established by the fact that in November 2014, R&O agreed  
16 to sell itself to Isolani, LLC ("Isolani").  Isolani agreed to acquire 100% of R&O[1]  
17 for ***$350,000*** (subject to certain closing conditions), did in fact acquire 10%, and,  
18 during the period before closing on the remaining 90%, was appointed by R&O as  
19 R&O's manager to run R&O Pharmacy, all with R&O's knowledge and  
20 participation.  But, according to R&O's Answer to Valeant's Counterclaim (at p.  
21 10), that deal is now off, and R&O has shut its doors.  

22    But whatever R&O is doing now, it does not change the fact that, after  
23 R&O agreed to sell itself to Isolani, R&O accelerated the purchase of Valeant  
24 products, for which R&O regularly paid Valeant from March through July 2015.  
25 For those five months, the R&O/Valeant supply relationship worked fine, with  

26  
27 [1]    While Russell Reitz ("Reitz"), the Pharmacist-in-Charge ("PIC") for R&O, agreed to sell his interest in R&O for $350,000 to Isolani, two months before that transaction, Reitz bought out Robert and Bonnie Osbakken (the "O" in R&O) for  
28 ***$500***.  (*See* Steinberg Decl., Ex. A (Purchase of Membership Interest Agreement).)  

VALEANT'S MOTION FOR A PRELIMINARY INJUNCTION

R&O making payments of approximately $18.4 million, paid directly by R&O to Valeant.  When a dispute emerged between R&O and Isolani (not Valeant), R&O used it as a convenient excuse to keep the $19.3-plus million owed to Valeant.

There is no dispute R&O purchased, received and dispensed Valeant medications.  Nor is there any dispute that R&O received millions for those Valeant medications.  Valeant shipped the requested medications directly to R&O, and R&O—after acknowledging receipt of the medications—dispensed them to patients pursuant to prescriptions from doctors, collecting millions of dollars in co-payments and reimbursement checks from third-party payors.  On or about July 16, 2015, without any notice to Valeant, R&O stopped making any payments to Valeant, taking those funds for itself.  To date, R&O refuses to disclose (1) where the reimbursement and copayment checks are, (2) whether those checks have been converted into cash or deposited with a bank, or (3) even the amounts of the checks R&O has collected.  Valeant simply does not know where R&O has hidden the money it owes, nor even how much R&O has misappropriated.

R&O has no affirmative claim that it, instead of Valeant, is entitled to the millions it now wrongfully holds.  In fact, before Valeant's Counterclaim, R&O offered a different excuse:  R&O boasted that Valeant could not come forward with a "shred of evidence" to show R&O's indebtedness to Valeant.  (Compl. ¶ 11.)  But that boast is now gone:  in its Answer to Valeant's Counterclaim, R&O now admits that it

- received copies of purchase orders and invoices identifying R&O as the recipient of Valeant medications (***Admitted***:  *see* Answer to Countercl. ¶¶ 26–27);

- accepted delivery of those Valeant medications (***Admitted:*** *id.* ¶ 27);

- used the Valeant medications to fill patient prescriptions (***Admitted:*** *see id.* ¶¶ 30, 32); and

- received reimbursement checks from the patients' insurance companies as payment for those Valeant medications (***Admitted:*** *see id.* ¶ 30).

Contrary to R&O's extravagant claim that not a "shred of evidence" showed R&O's significant debts to Valeant, R&O has now put the lie to its original boast through its own Answer.

This Motion seeks to preserve the *status quo* and ensure that the $19.3-plus million that R&O received is maintained and secured until the end of the litigation and not wrongfully used by R&O.  Adding to the exigency, the checks R&O possesses will soon become stale (as the checks will have been outstanding for 180 days) and may become invalid if they are not deposited in a bank account.  *See* Cal. Com. Code § 4404 ("A bank is under no obligation to a customer having a checking account to pay a check, other than a certified check, which is presented more than six months after its date, but it may charge its customer's account for a payment thereafter in good faith.").  And worse still, it does not appear that R&O has any ability to pay what is owed to Valeant; R&O has shut its doors and, prior to its abandoned deal with Isolani, valued the entire business at $1,000 in September 2014.  (*See* Steinberg Decl.,  Ex. A.)  R&O is in no position to pay these substantial amounts, which has prompted various courts in analogous circumstances to find irreparable harm.  *See Rosen Entm't Systems, LP* v. *Eiger Vision*, 343 F. Supp. 2d 908, 920 (C.D. Cal. 2004) (finding that the defendant's statements that it would go out of business if forced to pay royalties to the plaintiff supported a finding that the plaintiff would suffer irreparable harm in the absence of an injunction, because a damages remedy would be ineffectual).  To avoid irreparable harm, Valeant asks for an order that would preserve the *status quo* by requiring R&O to deposit all funds generated by R&O's fulfillment of prescriptions for Valeant medications either into an appropriate escrow account or with the Clerk of the Court.  Of course, Valeant is confident that this Court will determine it to be the rightful owner of the money collected on the sale of its

medications; this Motion just secures that remedy.

## STATEMENT OF FACTS

R&O admitted nearly every fact necessary to decide this Motion in favor of Valeant in its Answer to Valeant's Counterclaim.

### The Parties

Valeant develops, manufactures, and markets pharmaceutical medications throughout the United States, focusing in prescription dermatology, eye health, aesthetics, consumer products, oral health, neurology, and other therapeutic areas.  (*Admitted:* Answer to Countercl. ¶ 16.)  As one channel for dispensing pharmaceutical products, Valeant works with specialty pharmacies that provide prescription services to patients across the country.  (*Admitted: Id.* ¶ 17.)

R&O operated a pharmacy located at 651 Via Alondra, Units 708 and 709, Camarillo, California 93012 (the "Pharmacy"); Russell Reitz ("Reitz") was the Pharmacist-In-Charge ("PIC") at the Pharmacy.  (*Admitted: id.* ¶ 19.)

### R&O Tries to Sell Itself; Appoints Isolani As Its Manager

In November 2014, R&O and Reitz entered into several agreements with Isolani.[2]  Two agreements are particularly relevant:  a Purchase and Sale Agreement, selling the entire R&O business to Isolani for $350,000, and a Management Services Agreement ("MSA"), through which R&O delegated the management of the Pharmacy to Isolani.  (*Admitted: id.* ¶¶ 21–22.)  In that MSA, Reitz and R&O delegated full responsibility for the day-to-day administrative operations of the Pharmacy to Isolani, including authorizing Isolani to place orders for medications for the Pharmacy.  (*Admitted:* Countercl. Ex. B; *see also* Answer to Countercl. ¶ 22.)  Also in November 2014, as part of the transition, Reitz

---

[2]  Isolani has a relationship with Philidor Rx Services, LLC ("Philidor"). Isolani had provided an option to sell Isolani to Philidor upon the consummation of the completed Isolani acquisition of R&O.  Philidor, in fact, provided services to Isolani in connection with the ordering of Valeant medications  (*see* Declaration of Eric Rice ("Rice Decl."), Ex. B (Purchase Option Agreement)) and, in fact, was the party that hired Reitz.  (*Admitted:* Answer to Countercl. ¶ 23.)

1   accepted an offer to remain as the PIC at the Pharmacy for an additional 18

2   months.  (*Admitted:* Answer to Countercl. ¶ 23.)

3          With new management in place, in December 2014, R&O ordered

4   medications from Valeant to fill patient prescriptions and collected co-payments

5   from patients and reimbursement checks from insurance companies.  (*Admitted:*

6   *id.* ¶¶ 30, 32.)  R&O paid Valeant by depositing checks into an account, which was

7   then used to pay Valeant.  (Carro Decl. ¶ 5.)  R&O, of course, knew that  it would

8   be dispensing Valeant medications:  Reitz sent an email confirming his

9   understanding that he would be dispensing Valeant medications, and that he was

10  "eager" to begin doing so.  (*See* Countercl. Ex. C; *Admitted:*  Answer to

11  Countercl. ¶ 25.)

12         ***R&O's Purchases of Valuable Valeant Medications***

13         R&O ordered and received shipments of Valeant medications between

14  December 2014 and August 2015, received copies of the accompanying purchase

15  orders (*admitted:* Answer to Countercl. ¶ 26), and dispensed those medications to

16  patients.  (*Admitted*:  *Id.* ¶ 30.)

17         R&O engaged in a specific business process to fill an order to Valeant

18  and document it.  The process began with a purchase order to Valeant, in this case,

19  initiated by Philidor (the entity that employed Reitz, the Pharmacist in Charge).

20  Valeant responded by sending an invoice, on Valeant letterhead, noting R&O as

21  the party to receive the medications and the party liable for payment.  (*Admitted:*

22  Answer to Countercl. ¶ 27 (admitting that R&O was to receive the medications);

23  *see also* Countercl. Ex. E.)  R&O received copies of the purchase orders sent by

24  Philidor to Valeant.  (*Admitted: id.* ¶ 26.)  And contrary to R&O's implausible and

25  patently false allegation that it "has never received a single invoice" from Valeant

26  (*see* Compl. ¶ 9), R&O received copies of Valeant invoices.  (Carro Decl., Ex. A

27  (Email copying Reitz, attaching invoices 3000380112, 3000383740, 3000373241,

28  3000382261, 3000374360, 3000383154, and 3000372632).)

-5-

Valeant shipped the medications directly to R&O.  When the products arrived, Reitz or another R&O employee would accept delivery of the goods and sign the bill of lading.  (***Admitted:***  Answer to Countercl. ¶ 27.)  Reitz or another R&O employee would then compare the products in the shipment to the purchase order, checking off each item on the purchase order to signify that it had arrived.  (***Admitted:***  *id.* ¶ 28.)  When all items on the purchase order had arrived, Reitz or another R&O employee would make a notation on the purchase order indicating that it was "Complete."  (***Admitted:***  *id.*)

Between January and August 2015, R&O filled numerous prescriptions for Valeant's pharmaceutical products.  (***Admitted***:  Answer to Countercl. ¶ 30.)  R&O collected co-payments and reimbursement checks from patients' insurance companies for these filled prescriptions.  (***Admitted***: *id.*)  And from March through July 2015, R&O paid Valeant directly for Valeant medications sold to R&O totaling approximately $18.4 million.  (Carro Decl. ¶ 5.)  Valeant received the last of these payments on July 16, 2015.  (*Id.*)

### *The Dispute Between Isolani and R&O*

According to a sworn declaration submitted in California Superior Court by Isolani's sole member, a dispute arose between Reitz and Isolani at some point around the summer of 2015.  Isolani attested that Reitz "began confiscating, hiding, and otherwise withholding reimbursement checks sent to the Pharmacy by various payors," sometime after May 2015, and "[a]s of August 31, 2015, the Pharmacy [R&O] has an outstanding balance due on invoices to Payors of $19,319,659.08."  (Rice Decl., Ex. C, ¶¶ 11-12, 17.)  Isolani estimated that R&O had received at least $15 million in reimbursement checks for the outstanding accounts receivable as of August 31, and those checks were in possession of Reitz.  (*Id.* ¶ 17.)  "[B]ecause Reitz refused to disclose any information about the checks he has confiscated and hidden," Isolani was unable to determine the exact amount the reimbursement checks (*id.*), and on September 8, 2015, filed a state court

-6-

1   action against Reitz and R&O, seeking writ of attachment and injunctive relief.[3]

2   (Steinberg Decl., Ex. B (Isolani Complaint for Writ of Attachment).)

3   ### R&O Stops Paying Valeant --- Without Telling Valeant

4           After July 16, 2015, Valeant ceased receiving payments for the

5   medications it sold to R&O.  (Carro Decl. ¶ 6.)  Based on Valeant invoices, which

6   identify each of the Valeant medications delivered to R&O, their quantities and

7   their list prices, as of August 31, 2015, R&O had a payable balance for Valeant

8   medications with a combined total manufacturer's list price of $69,861,343.08.

9   (Carro Decl. ¶ 6.)  Because different payors agree to pay different amounts and

10  because R&O had been authorized to utilize Valeant's copayment assistance

11  program (which can dramatically lower the drug prices), R&O did not collect the

12  full $69,861,343.08 in co-payments and reimbursement checks.  (Carro Decl. ¶ 7.)

13  Valeant estimates that the total co-payments and reimbursement checks actually

14  collected by R&O as payment for the prescriptions it dispensed amount to in

15  excess of $19.3 million.  (Carro Decl. ¶ 7.)  Because R&O has been uncooperative

16  in reporting the amounts of copayments and reimbursements checks that it

17  collected for the products it dispensed, Valeant is uncertain of the exact amount

18  wrongfully retained by R&O.  Worse still, because R&O is not providing the

19  checks, Valeant has no record of which payors have paid, and which have not,

20  adding further uncertainty to Valeant's efforts to collect funds on the medications.

21          An unwitting participant in the dispute between Isolani and R&O,

22  Valeant stopped receiving payments from R&O on or after July 16, 2015.  (Carro

23  Decl. ¶ 6.)  Although Reitz ceased making payments to Valeant for the medications

24

25  [3]      In a one-page minute-order issued the same day, the Superior Court denied
26  Isolani's Application on grounds of "no emergent situation presented and
    inadequate evidence presented."  (Steinberg Decl., Ex. D.)  Any deficiencies that
27  the State Court found in Isolani's application are not present here as Valeant's
    Motion amply demonstrates the urgency in requiring R&O to deposit all funds
28  generated by R&O's fulfillment of prescriptions for Valeant medications into an
    appropriate escrow account or with the Clerk of the Court.

1    he received, Reitz continued to use these medications to fill patients' prescriptions.

2    (*Admitted:*  Answer to Countercl. ¶ 32.)  Reitz also continued to collect

3    reimbursement checks from third-party payors.  (*Admitted:  Id.* ¶ 7.)

4             R&O *admits* that it knowingly ordered, received, dispensed, and

5    collected payment for Valeant medications.  R&O also *admits* that it has not made

6    any payment to Valeant for these medications after July 16, 2015.  Yet R&O has

7    made clear that it intends to remain in wrongful possession of the funds that it

8    owes to Valeant, apparently solely for R&O's benefit.  (*See* Compl. Ex. B.)

9                           **ARGUMENT**

10            A plaintiff seeking a preliminary injunction must demonstrate that (1)

11    it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the

12    absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an

13    injunction is in the public interest.  *Winter* v. *Nat'l Resources Defense Council,*

14    *Inc.*, 555 U.S. 7, 20 (2008); *Alliance for the Wild Rockies* v. *Cottrell*, 632 F.3d

15    1127, 1131 (9th Cir. 2011).  Whereas a plaintiff seeking an injunction that would

16    change the status quo before litigation faces "a high burden," *Thalheimer* v. *City of*

17    *San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011), courts are more receptive to

18    injunctions which seek merely to *preserve* the status quo.  *See Tanner Motor*

19    *Livery, Ltd.* v. *Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963) ("[T]he usual function

20    of a preliminary injunction is to preserve the status quo ante litem pending a

21    determination of the action on the merits."); *Lough* v. *Blount*, 336 F. Supp. 627,

22    628 (D. Mont. 1971) ("A preliminary injunction is granted if, without such

23    interference by the court, plaintiff will suffer irreparable injury or if it is necessary

24    to preserve the *status quo*.").[4]

25

26    [4]      Although Valeant would normally seek a writ of attachment for the specific account where R&O is holding the money it collected from patients and their

27    insurance companies, R&O has refused to disclose whether it has deposited that money into an account and, if it has, where that account is located.  Worse, simply

28    attaching the checks (and not cashing them) would mean that Valeant would be visited by precisely the harm that it is seeking to avoid through this Motion.

# I.   VALEANT CAN EASILY DEMONSTRATE THAT IT IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

For the highly valuable Valeant medications it provided to R&O (at R&O's request), Valeant is entitled to be paid, whether under a claim of breach of contract or unjust enrichment.  There is simply no basis for R&O to keep and use these funds during the pendency of this litigation.

## A.   Valeant Will Prevail on Its Breach of Contract Claim.

Under California law, "[a] cause of action for breach of contract requires proof of the following elements:  (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  *Blizzard Entm't* v. *Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1017 (C.D. Cal. 2013) (alteration in original).  R&O *admits* each of these elements.

### 1.   R&O's Purchase Orders—and Valeant's Corresponding Invoices—Constitute Valid Contracts.

California law provides that a contract can be proven by showing four elements:  (1) the parties were capable of contracting, (2) the parties expressed their mutual consent, (3) the contract's object was lawful[5], and (4) the contract was supported by mutual consideration.  Cal. Civ. Code § 1550; *ASP Props. Grp.* v. *Fard, Inc.*, 133 Cal. App. 4th 1257, 1268–69 (2005).  Because the transactions between R&O and Valeant were for the sale of goods, the provisions of California's Uniform Commercial Code apply.  *See* Cal. Com. Code § 2102.

#### a.   R&O Is Bound by the Purchase Orders Sent to Valeant By Those Acting on Its Behalf.

Nowhere has R&O alleged any lack of capacity to contract, nor could it.  An LLC organized under the laws of California (like R&O) has "all the powers of a natural person in carrying out its business activities," including the power to enter into contracts.  Cal. Corp. Code § 17701.05(d).  If R&O had any "lack of

---

[5]   There is no dispute that the contracts at issue, for the sale of medicine to a pharmacy for dispensing to patients, are both lawful and in the public interest.

capacity" argument, it was required to raise it in its Answer, *see* Fed. R. Civ. P. 12(b), and it did not.

Anyone with capacity to contract may appoint an agent to act on his behalf.  Cal. Civ. Code § 2296.  An agency relationship is created when the principal delegates authority to the agent to act on the principal's behalf in dealings with third parties, and when the agent consents to act on behalf of the principal and subject to his control.  *Flores* v. *Evergreen At San Diego, LLC*, 148 Cal. App. 4th 581, 588 (2007); *see Channel Lumber Co., Inc.* v. *Porter Simon*, 78 Cal. App. 4th 1222, 1227 (2000).  Once the agency relationship is created, the principal is bound on all contracts that the agent had actual or apparent authority to enter into on the principal's behalf.  Cal. Civ. Code § 2330; *see also id.* § 2337 ("An instrument within the scope of his authority by which an agent intends to bind his principal, does bind him if such intent is plainly inferable from the instrument itself."); *Sunset Milling & Grain Co.* v. *Anderson*, 39 Cal. 2d 773, 778 (1952).

R&O delegated full responsibility for the day-to-day administrative operations of the Pharmacy to Isolani by entering into the MSA.  (***Admitted***: Answer to Countercl. ¶ 22; Countercl. Ex. B.)  R&O further admits that it maintained this relationship through August 31, 2015.  (***Admitted:***  *see* Answer to Countercl., Affirmative Defenses.)  R&O's delegation to Isolani was broad and sweeping and, by necessity, enabled it to enter into contracts to procure the Valeant medications that R&O needed to fill patients' prescriptions.  (*See* Countercl. Ex. B at 2 ("[Isolani] shall have full responsibility for the operation and conduct of the business of the Pharmacy.").)

Isolani, in turn, sought Philidor's assistance in providing inventory management services for R&O.  (*See* Rice Decl.*,* Ex. A (Prescription Drug Services Agreement ("PDSA") between R&O, signed by Isolani, and Philidor).)  This was no surprise to Reitz or R&O.  Reitz, of course, was *employed by Philidor*.  (***Admitted***:  Answer to Countercl. ¶ 24.)  And, in December 2014 Reitz sent an

-10-

email expressing his eagerness "to start dispensing [Valeant] products *via Philidor Rx services*." (**Admitted**:  Countercl. Ex. C (emphasis added); *see also* Answer to Countercl. ¶ 25.)

> **b.**   **R&O—Through Those Acting on Its Behalf—Offered to Purchase Pharmaceutical Products from Valeant by Sending Purchase Orders, and Valeant Accepted Those Offers By Sending Invoices in Response.**

For a contract to be binding, the parties must express their mutual assent.  *See Rodriguez* v. *Oto*, 212 Cal. App. 4th 1020, 1027 (2013); *ASP Props. Grp.*, 133 Cal. App. 4th at 1269.  There is no specific form to how the parties must express that assent: "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."  Cal. Com. Code § 2204(1).  One typical expression of assent is through an offer to form a contract and its acceptance by another.  *Donovan* v. *RRL Corp.*, 26 Cal. 4th 261, 270 (2001); *see also Steiner* v. *Mobil Oil Corp.*, 20 Cal. 3d 90, 104 (1977);  Cal. Com. Code § 2206(1)(a).

For months, R&O, with full knowledge, offered to purchase medications from Valeant;  Valeant accepted those offers.  To document the orders, Isolani and Philidor prepared the Purchase Orders for R&O, through which R&O offered to purchase Valeant pharmaceuticals.  (*See* Rice Ex. A, PDSA ¶ 4 (authorizing Philidor to assist R&O in filling prescriptions by procuring medications on R&O's behalf).)  These forms were prominently labelled "Product Order" (Countercl. Ex. D, at 4), and *were provided to R&O*.  They listed the specific Valeant medications requested, their list prices, and the requested quantities.  (*Id.*)  Valeant was certainly justified in understanding the Purchase Orders to constitute R&O's "willingness to enter into a bargain," *City of Moorpark* v. *Moorpark Unified Sch. Dist.*, 54 Cal. 3d at 930, particularly since the order form stated "Please ship to: R&O Pharmacy" just above the list of ordered medications.  (Countercl. Ex. D at 4.)  Finally, the forms were signed by Andrew Davenport,

-11-

Philidor's CEO, and as noted above, Philidor was the party performing the management services for R&O's benefit, and were all done with the full knowledge of R&O (*see* Countercl. Ex. D, copying "Russell Reitz").  With full knowledge of them, R&O assented to the Purchase Orders and the transactions.  In fact, R&O paid Valeant $18.4 million through this precise process.

The invoices that Valeant sent to R&O and Philidor just as clearly constituted acceptances of the Purchase Orders.  The invoices identified the Valeant medications requested in the Purchase Order, confirmed the prices for the Valeant medications, and confirmed that R&O was the "recipient," as well as the party to be billed for, the Valeant medications.  (Countercl. Ex. E.)  The invoices also provided instructions for sending payment to Valeant.  Under well-settled California law, this exchange of Purchase Orders and invoices created binding contracts for the sale of tens of millions of dollars' worth of Valeant medications.

**c.   Valeant's Agreement to Ship Millions of Dollars' Worth of Medications to R&O, and R&O's Corresponding Agreement to Pay for Those Medications, Constituted Valuable Consideration.**

A contract is enforceable where "consideration was given in exchange for the promise."  *US Ecology, Inc.* v. *State*, 92 Cal. App. 4th 113, 128 (2001).  Simply put, Valeant shipped its medications in consideration of R&O's desire to obtain them and its promise to pay for them.  The consideration given by the promisee must be made "as an inducement to the promisor" as part of a bargained-for exchange.  Cal. Civ. Code § 1605; *see Saks* v. *Charity Mission Baptist Church*, 90 Cal. App. 4th 1116, 1135 (2001).  R&O never—before it stopped payment—asserted that there was no consideration for these contracts, nor did it even raise that issue in its Answer.  There's a reason for that:  from March until July 16, 2015, R&O paid Valeant directly for the Valeant medications it disbursed.  Repeatedly, Valeant shipped the requested medications directly to R&O.  (***Admitted:***  Answer to Countercl. ¶ 27.)

### 2. Valeant Fully Performed Its Contractual Obligations by Shipping the Requested Pharmaceuticals to R&O.

California's Commercial Code specifies that "[t]he obligation of the seller is to transfer and deliver" the ordered goods.  Cal. Com. Code § 2301.  R&O admits that Valeant fully performed its obligation under the contracts to deliver the requested pharmaceutical products to R&O.  (***Admitted***:  Answer to Countercl. ¶ 26.)  R&O further admits that it took possession of all the medications Valeant shipped to R&O and either dispensed those medications to patients pursuant to doctor prescriptions or retains them in its inventory.  (***Admitted***: *Id.* ¶¶ 27, 30, 32, 34, 42.)  Because Valeant has fully performed, Valeant is entitled to enforce its right to payment under those contracts against R&O.

### 3. R&O's Failure to Pay Valeant for the Medications Constitutes a Breach of the Purchase Contracts.

Once the seller tenders the goods that the buyer purchased, the buyer must accept the goods and pay for them according to the terms of the contract.  Cal. Com. Code § 2507.  The contracts between Valeant and R&O specified that R&O was to pay for the pharmaceuticals within either 30 or 45 days from the date of each invoice, depending on the particular transaction.  Valeant sent the last such invoice on August 31, 2015.  (Carro Decl. ¶ 4.)  Simply put, Valeant delivered all of the requested Valeant medications to R&O as required under the contracts.  R&O admits these basic facts.  (***Admitted***:  Answer to Countercl. ¶¶ 26–27.)

After July 16, 2015, however, R&O stopped making payments to Valeant for the medications that it had already received, all without notice to Valeant.  (*See* Carro Decl. ¶ 6.)  The time for R&O to pay for the Valeant medications under the contracts has long since passed, and R&O has made clear that it has no intention of making these payments.  (*See* Compl. Ex. B.)

### 4.   Valeant Has Incurred Tens of Millions of Dollars in Damages as a Result of R&O's Breach.

When a buyer has accepted the goods and thereafter fails to pay the purchase price according to the terms of the contract, the seller is entitled to recover the contract price for those goods.  Cal. Com. Code § 2709.  As of August 31, 2015, R&O had a payable balance for Valeant medications, and R&O has sold those medications, receiving in excess of $19.3 million for such sales that it is required to pay to Valeant, as estimated by Valeant.  (Carro Decl. ¶¶ 6–7.)

### B.   Valeant Will Also Prevail on Its Claim for Unjust Enrichment.

It is difficult to imagine that R&O will claim that it can sell Valeant medications without paying Valeant for them.  Even if, somehow, R&O were to attempt to dispute the existence of valid contracts (and had evidence, and not conjecture, to do so), it would nevertheless be liable to Valeant owing to unjust enrichment.  A plaintiff is entitled to relief under a theory of unjust enrichment where the defendant (1) received a benefit and (2) unjustly retains that benefit at the expense of the plaintiff.  *Vega* v. *Ocwen Fin. Corp.*, No. 2:14-cv-04408, 2015 WL 1383241, at *15 (C.D. Cal. Mar. 24, 2015); *Peterson* v. *Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008); *Lectrodryer* v. *SeoulBank*, 77 Cal. App. 4th 723, 726 (2000); *First Nationwide Savings* v. *Perry*, 11 Cal. App. 4th 1657, 1662 (1992).  In its Answer, R&O conceded all of the elements establishing that R&O has been unjustly enriched by receiving third-party payments for Valeant medications on which R&O has never paid *anyone*.

### 1.   R&O Has Received a Benefit in the Form of Co-Payments and Third-Party Reimbursement Checks For Dispensing Valeant Medications.

On an unjust enrichment claim, defendant is deemed to receive a benefit if he has obtained "*any* form of advantage."  *Ghirardo* v. *Antonioli*, 14 Cal. 4th 39, 51 (1996) (emphasis added); *First Nationwide Savings* v. *Perry*, 11 Cal. App. 4th at 1662.  Again, R&O's Answer admits the unjust enrichment:  R&O admits that it (i) received Valeant medications; (ii) filled numerous prescriptions

-14-

for Valeant medications to patients; and (iii) received reimbursement checks from the patients and patient' insurance companies.  (***Admitted***:  Answer to Countercl. ¶¶ 30, 32.)  Furthermore, R&O admits that it continued to dispense Valeant medications and collect third-party payments for those filled prescriptions after July 16, 2015.  (***Admitted***:  *Id.* ¶ 32.)

After making numerous admissions, in its Answer, R&O professes a remarkable sense of amnesia, supposedly lacking knowledge as to whether Valeant received any payments after July 16, 2015 for the medications Valeant sent directly to R&O, R&O accepted, R&O dispensed and R&O collect payments on.  (*Id.*)  But, not surprisingly, R&O does not aver that after July 16, 2015, it paid someone else for Valeant's medication.  R&O has obtained a considerable benefit.

### 2.   It Would Be Unjust to Allow R&O to Retain Payments for Valeant Medications.

A defendant must make restitution of the benefits it received "if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [the defendant] to retain it."  *Ghirardo*, 14 Cal. 4th at 51.  It is difficult to imagine how R&O could be allowed to keep the proceeds of its sale of Valeant medication over Valeant.  California law squarely rejects such claim.  In *Lectrodryer*, for example, plaintiff sold a sieve dryer a company known as JDP, who paid for the dryer by obtaining a letter of credit from the defendant.  77 Cal. App. 4th at 725.  The defendant had required JDP to pre-pay for the letter of credit.  *Id.*  When the plaintiff mailed a documentary presentation to the defendant with its request for payment on the letter of credit, the defendant claimed that there was a discrepancy with the submitted documentation—despite its receipt of a discrepancy waiver from JDP—and refused to pay the letter of credit.  *Id.*  After the letter of credit expired, the defendant did not return the money that JDP had pre-paid; instead, it used the money for its own benefit (to reduce its exposure on JDP's credit line with the defendant).  *Id.*  The court affirmed the jury's finding that the defendant's retention of the pre-paid funds was unjust.  *Id.* at 727–28.

1  Just as the *Lectrodryer* defendant knew that JDP had obtained the
2  letter of credit to pay the plaintiff, R&O knew that it was receiving, at the request
3  of the party it authorized to procure Valeant medications on its behalf, large
4  quantities of medications directly from Valeant.  Reitz's email in December 2014
5  expressed his eagerness to "start dispensing Valeant products via Philidor RX
6  services," reflecting his knowledge that R&O would be receiving Valeant
7  medications that it would dispense to its patients (Countercl. Ex. C), and was
8  copied on purchase orders seeking Valeant medications, which listed R&O as the
9  recipient of the Valeant medications.  (*Admitted:*  Answer to Countercl. ¶¶ 26–27;
10 Carro Decl. ¶ 3.)  Most tellingly, from March until July 2015, R&O made
11 payments for these medications to Valeant.  (Carro Decl. ¶ 5.)  After July 16, 2015,
12 however, R&O stopped making payments for the medications (Carro Decl. ¶ 6),
13 though it continued to fill prescriptions for Valeant medications and collect
14 payments from third parties.  (*Admitted*:  Answer to Countercl. ¶¶ 30, 32.)  Given
15 the overwhelming evidence of R&O's knowledge that it has benefitted at Valeant's
16 expense, it would be unjust to allow R&O to retain the payments that it received
17 for filling prescriptions for Valeant medications that R&O has not paid for.

18 ### C. Valeant Will Also Prevail on Its Claim for an Accounting.

19 Essential to preserving the status quo is an accounting of precisely
20 what R&O has.  To that end, a plaintiff may compel a defendant to account for
21 money or property in two situations: "(1) where a fiduciary relationship exists
22 between the parties, or (2) where, even though no fiduciary relationship exists, the
23 accounts are so complicated that an ordinary legal action demanding a fixed sum is
24 impracticable." *Los Defensores, Inc.* v. *Gomez*, 223 Cal. App. 4th 377, 401
25 (2014); *see also Civic Western Corp.* v. *Zila Indus., Inc.*, 66 Cal. App. 3d 1, 14
26 (1977).  The plaintiff need only show that there is some relationship between the
27 parties that requires an accounting, and that the plaintiff is owed some balance
28

1   "that can only be ascertained by an accounting."  *Teselle* v. *McLoughlin*, 173 Cal.

2   App. 4th 156, 179 (2009).

3              Here, Valeant and R&O were parties to numerous contracts for the

4   purchase of Valeant pharmaceutical products.  These contracts were memorialized

5   in the purchase orders and invoices that R&O received.  (*See* Answer to Countercl.

6   ¶¶ 26-27.)  As shown above, however, R&O has breached its obligation to pay for

7   the medications under the contracts and is wrongfully withholding the amounts due

8   to Valeant.  As of August 31, 2015, R&O had a payable balance for Valeant

9   medications with a combined manufacturer's list price of $69,861,343.08.  (Carro

10  Decl. ¶ 6.)  Because Valeant has various arrangements with third party payors and

11  had authorized R&O to utilize Valeant's co-payment assistance program for

12  dispensing these medications, R&O did not collect this full amount in co-payments

13  and reimbursement checks.  (Carro Decl. ¶ 7.)  Yet R&O refuses to disclose any

14  information about the amount of the payments it has received to Valeant or Isolani.

15  (Carro Decl. ¶ 7; Rice Decl. Ex. C ¶ 17.)  Although Valeant estimates that R&O

16  has collected in excess of $19.3 million for the Valeant medications that it

17  dispensed to patients pursuant to doctors' prescriptions, Valeant is unable to

18  determine the precise amount of payments that R&O has received without an

19  accounting.  (Carro Decl. ¶ 7; *see also Civic Western Corp.*, 66 Cal. App. 3d at 15-

20  16 (reversing the trial court's grant of summary judgment in favor of the defendant

21  on a claim for an accounting—in part due to "the voluminous transactions between

22  the parties"—where the plaintiff had assigned the defendant its accounts

23  receivable, and the defendant was required to remit 80% of those accounts

24  receivable to the plaintiff.)  Valeant is therefore likely to succeed on the merits of

25  its claim for an accounting.

26  **II.    VALEANT WILL LIKELY SUFFER IRREPARABLE HARM IN THE
        ABSENCE OF AN INJUNCTION**

27

28             To obtain a preliminary injunction, a party must show that irreparable

    injury is likely in the absence of an injunction.  *Winter*, 555 U.S. at 22; *Alliance for*

-17-

1   *the Wild Rockies*, 632 F.3d at 1135.  The fact that a defendant's financial resources

2   would be insufficient to pay a potential damage award is sufficient to establish that

3   the plaintiff would be irreparably harmed absent an injunction.  *See Rosen Entm't*

4   *Systems, LP* v. *Eiger Vision*, 343 F. Supp. 2d 908, 920 (C.D. Cal. 2004); *see also*

5   *Privitera* v. *Bd. Of Med. Quality Assurance*, 926 F.2d 890, 898 (9th Cir. 1991)

6   (holding that the district court erred in denying an injunction solely because the

7   threatened injury was three months away).

8          Valeant will suffer immediate, irreparable harm absent the injunctive

9   relief sought.  After July 16, 2015, R&O ceased making payments for the

10  medications it received from Valeant (Carro Decl. ¶ 6), although it continued to fill

11  prescriptions for Valeant medications and to receive checks from patients and

12  third-party payors in return.  (Answer to Countercl. ¶ 32.)  Accordingly, some of

13  the checks in R&O's possession are dated as early as July 2015, and most of the

14  checks will expire after 180 days of the date the check was executed.  *See* Cal.

15  Com. Code § 4404 ("A bank is under no obligation to a customer having a

16  checking account to pay a check, other than a certified check, which is presented

17  more than six months after its date, but it may charge its customer's account for a

18  payment thereafter in good faith.").  If the checks are allowed to become stale

19  before Valeant secures a judgment against R&O, Valeant would then be required

20  to renegotiate those checks with each individual or insurance company that made

21  payments to R&O, at great expense to Valeant.  But it is worse than that because

22  R&O is not telling Valeant which checks have been received, and so cannot even

23  attempt to seek payment directly from the various unknown payors.

24          If the co-payment and reimbursement checks are allowed to expire,

25  R&O will be unable to satisfy a judgment in favor of Valeant.  R&O hardly has

26  much by way of assets.  Proof of that is the fact that, in November 2014, Isolani

27  acquired an option to purchase all of the ownership interest in R&O for $350,000.

28  (Countercl. Ex. A), and even that amount may be overstated.  (*Compare* Countercl.

-18-

Ex. A *with* Steinberg Decl., Ex. A.)  And R&O has now ceased operations, meaning that it is no longer generating revenue to cover its expenses (such as rent, legal expenses and whatever other monies R&O takes for itself).  A business once valued at $350,000 with no source of continuing revenue is unable to pay a judgment for more than $19.3 million.  Valeant has more than met its burden.  *See Rosen Entm't Systems, LP* v. *Eiger Vision*, 343 F. Supp. 2d 908, 920 (C.D. Cal. 2004) (finding that the defendant's statements that it would go out of business if forced to pay royalties to the plaintiff, making a damages remedy ineffectual, supported a finding that the plaintiff would suffer irreparable harm in the absence of an injunction).

## III.   THE BALANCE OF HARDSHIPS TIPS STRONGLY IN VALEANT'S FAVOR

While Valeant would suffer substantial harm in the absence of an injunction, R&O will not be harmed in any legitimate way, as R&O does not have any legal entitlement to those funds.  In sharp contrast, Valeant would suffer permanent harm if the checks are allowed to expire, since, as discussed above, Valeant would be then unable to collect on the checks.  The balance of hardships tips strongly in Valeant's favor.

To the extent R&O claims that it would be harmed by an injunction, Valeant offers to post bond in the amount of $10,000, which would be more than sufficient to offset any purported harm by R&O.  *See Burton* v. *Matanuska Valley Lines, Inc.*, 244 F.2d 647, 653-54 (9th Cir. 1957) (upholding an injunction preventing the defendant from operating a busing business, finding that the harm to the defendant from the issuance of the injunction would be "inconsequential," since the plaintiff posted a bond in an amount equal to the defendant's investment in the venture).

## IV.   AN INJUNCTION REQUIRING R&O TO DEPOSIT THE CHECKS IT IS WRONGFULLY WITHHOLDING IS IN THE PUBLIC INTEREST

The public has a strong interest in ensuring that parties to a contract perform those obligations.  *See Blizzard Entm't Inc.*, 28 F. Supp. 3d at 1018–19; *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Chung*, No. CV 01-00659, 2001 WL 283083, at \*6 (C.D. Cal. Feb. 2, 2001).  The public interest in preventing R&O from being unjustly enriched by its wrongful behavior weighs in favor of an injunction.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Court should grant Valeant's Motion for a Preliminary Injunction and order R&O to deposit the disputed funds into an appropriate escrow account or with the Clerk of the Court.

Dated: December 7, 2015

<u>/s/ Michael H. Steinberg</u>
Michael H. Steinberg (SBN 134179)
steinbergm@sullcrom.com
Brian R. England (SBN 211335)
englandb@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725
Telephone:   (310) 712-6600
Facsimile:   (310) 712-8800

Attorneys for Defendant-Counterclaimant
*Valeant Pharmaceuticals North America, LLC*